b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Respondent | CRIMINAL DOCKET NO. 1:18-CR-00200 |
| VERSUS | DISTRICT JUDGE DRELL |
| REGINALD T. WARREN, Petitioner | MAGISTRATE JUDGE PEREZ-MONTES |

### SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the Court is a Motion to Vacate, Set Aside, or Correct Sentence filed by Petitioner Reginald T. Warren ("Warren") pursuant to 28 U.S.C. § 2255. ECF No. 71. Because Warren has not shown that he had ineffective assistance of counsel, his § 2255 Motion should be DENIED.

I. Background

Warren pleaded guilty in the United States District Court for the Western District of Louisiana, Alexandria Division, to one count of possession with intent to distribute 50 grams or more of methamphetamine and one count of possession of a firearm in furtherance of a drug trafficking offense. ECF No. 71. Warren was sentenced to a total of 300 months of imprisonment. ECF Nos. 142, 144. Warren did not appeal his convictions or sentences.

Warren filed this § 2255 Motion (ECF No. 71) raising the following allegations:

    1.    Warren had ineffective assistance of counsel when his attorney failed to file a direct appeal after Warren requested that she do so.

        **2.**    Warren's attorney failed to challenge the expired search warrant return.

Warren's trial counsel, Cristie Gibbens ("Gibbens"), filed an affidavit in response. ECF No. 79.

The Court held an evidentiary hearing at which Warren appeared with his attorney. ECF Nos. 84, 126. After that hearing, Gibbens requested – and the Court held – a second evidentiary hearing so she could clarify her affidavit.

## II. Law and Analysis

### A. The basis for a § 2255 action.

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." *See* 28 U.S.C. § 2255; *United States v. Cates*, 952 F.2d 149, 151 (5th Cir.), cert. den., 504 U.S. 962 (1992). The scope of relief under § 2255 is consistent with that of the writ of habeas corpus. *See Cates*, 952 F.2d at 151; *see also United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal. These allegations would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal may

2

not be asserted in a collateral proceeding. *See United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992); *see also United States v. Ressler*, 54 F.3d 257, 259 (5th Cir. 1995).

After conviction and exhaustion, and waiver of any right to appeal, courts are entitled to presume that the defendant stands fairly and finally convicted. *See United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991), cert. den., 502 U.S. 1076 (1992). Even if a defendant raises a constitutional error, he may not do so for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the error. *See United States v. Mimms*, 43 F.3d 217, 219 (5th Cir. 1995). Absent exceptional circumstances, establishment of ineffective assistance of counsel satisfies both cause and prejudice. *See United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995).

  B. <u>Warren is not entitled to relief under § 2255.</u>

Warren contends that trial counsel failed to file a direct appeal after Warren requested that she do so. Warren contends his counsel's failure to file a notice of appeal prevented him from raising the issue of inadmissibility of the firearm and ammunition as evidence. Warren argues that, because of that error, his sentence is substantially longer.

  1. <u>Warren must satisfy the Strickland test.</u>

To establish ineffective assistance of counsel, a defendant must meet the two-pronged test set forth by the United States Supreme Court in *Strickland v.*

*Washington*, 466 U.S. 668 (1984).  The defendant must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel actually had an adverse effect on the defense). *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994).

The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *See Anderson*, 18 F.3d at 1215.  On the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Anderson*, 18 F.3d at 1215; *see also U.S. v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994).

"In certain Sixth Amendment contexts, prejudice is presumed." *See Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (quoting *Strickland*, 466 U.S. at 692.  When counsel fails to file a requested appeal, a defendant is entitled to an appeal without showing that his appeal would likely have merit. *See Rodriguez v. United States*, 395 U.S. 327, 330 (1969).

Rather, prejudice is presumed "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken."

*Garza v. Idaho*, 139 S. Ct. 738, 744 (U.S. 2019) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)). This presumption applies even when the defendant has signed an appeal waiver. *See Garza*, 139 S. Ct. at 744 ("[E]ven the broadest appeal waiver does not deprive a defendant of all appellate claims."); *see also United States v. Leal*, 933 F.3d 426, 431 (5th Cir. 2019), *cert. den.*, 140 S. Ct. 628 (U.S. 2019) (no appeal waiver bars all appellate claims).

Filing a notice of appeal is, generally, a simple, non-substantive act that is within the defendant's prerogative. *See Garza*, 139 S. Ct. at 745–46. Under *Roe*, 528 U.S. at 477, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. . . . [F]iling a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Garza*, 139 S. Ct. at 746; *see also United States v. Calderon*, 665 Fed. Appx. 356, 364 (5th Cir. 2016). "The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Roe*, 528 U.S. at 478 (citing *Strickland v. Washington,* 466 U.S. 668, 688 (1984)).

"In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, . . . the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Roe*, 528 U.S. at 478.

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known." *Roe*, 528 U.S. at 478. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings."[1] *Roe*, 528 U.S. at 480.

However, "[e]ven in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Roe*, 528 U.S. at 480.

---

[1] A voluntary and unconditional guilty plea waives all non-jurisdictional defects. *See United States v. Minjarez*, 667 Fed. Appx. 144, 145 (5th Cir. 2016), cert. den., 137 S.Ct. (U.S. 2016) (citing *United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008)).

"[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe*, 528 U.S. at 484. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (citing *Cullen v. Pinholster,* 563 U.S. 170, 189 (2011)). "The defendant need not show 'that his hypothetical appeal might have had merit.'" *Bejarano*, 751 F.3d at 285 (citing *Flores–Ortega,* 528 U.S. at 486).

### 2. Trial counsel consulted Warren about his right to appeal five times and Warren declined.

Gibbens made clear in her affidavit (ECF No. 79) that she consulted with Warren five times regarding his right to appeal: on February 26, 2019 (when signing the plea agreement); on May 22, 2019 (when reviewing the presentence report); on June 13, 2019 (when preparing for the sentencing hearing; and twice on June 25, 2019 (before and after the sentencing hearing). After trial, Warren signed a waiver of his right to appeal that acknowledged he had been advised of his right to appeal his sentence and/or conviction. ECF No. 79-1.

Warren testified that he did not know he had a ground for appeal until he was told by "inmate counsel" in jail. Specifically, Warren alleges that the untimeliness of the second warrant return was a ground for a motion to suppress the gun and ammunition.

But the testimony shows that Warren's attorney advised and consulted him about his right to appeal both before and after his guilty plea and sentencing, and he declined each time.

### 3. Warren's guilty plea was entered voluntarily, and is the evidentiary basis for his firearm conviction.

Warren entered guilty pleas to two counts: (1) possession with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine; and (2) possession of a firearm in furtherance of a drug trafficking offense.

Warren contends that a search warrant issued on March 7, 2018, was executed on his residence on March 7, 2018. ECF Nos. 71-1 at 9; No. 71-2. The warrant stated it must be executed and returned within ten days. ECF No. 71-2. Detective Jonathan Roberts made a list of 36 items seized in the "return or search warrant," none of which were a firearm or ammunition. ECF No. 71-1 at 9. The return was signed and dated by Detective Roberts on March 7, 2018, and filed with the state court judge who issued the warrant. ECF No. 71-1 at 9.

On April 16, 2018, Detective Roberts filed a second return for the March 7, 2018 search, which was an addendum to the March 7, 2018 return. ECF No. 71-2. The April 16 return added items 27 and 38: a firearm and bullets. ECF No. 71-1 at 9; No. 71-2. Those items were the basis for Warren's conviction.

Warren argues the second return was untimely, that the firearm and ammunition should not have been allowed into evidence due to the expired return

8

date, and that his attorney should have objected to the introduction of the firearm and the ammunition.  ECF No. 71-1 at 9.  Warren also contends that, had he been able to file a direct appeal, he would have raised this issue on appeal.  Warren contends his attorney's failure to challenge the expired search warrant return resulted in a much higher sentence.

Warren's guilty plea served as the evidentiary basis for his conviction for possession of a firearm in furtherance of a drug-trafficking offense – not the firearm and ammunition.  *See McMann v. Richardson*, 397 U.S. 759, 766 (1970) (*citing Brady v. United States,* 397 U.S. 742 , 748 (1970))).  As the United States Supreme Court explained in *Brady*:

> Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment.  He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so. . . .  But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial–a waiver of his right to trial before a jury or a judge.  Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.

*Brady*, 397 U.S. at 748.

The issue, then, becomes whether a defendant's guilty plea was knowing and voluntary because it was based on a mistaken belief as to the admissibility of evidence.  The United States Supreme Court discussed this issue in *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970):

> In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the [evidence]. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by [evidence] erroneously thought admissible . . . depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.

At the first evidentiary hearing, Gibbens explained that both she and an investigator went over all of the evidence and documents with Warren. Gibbens verified that the search of Warren's residence was valid, and Warren admitted the loaded gun seized from his residence was his.

A video of the search of Warren's residence on March 7, 2018, showing the officers finding and seizing the gun (and drugs and paraphernalia), was admitted into evidence at the 2023 evidentiary hearing. ECF No. 116. The March 15, 2018 search return was also admitted at the evidentiary hearing and showed that it did not include the gun and ammunition. ECF No. 115-10 at 2-3. The April 16, 2018 search return was admitted at the evidentiary hearing, and showed the gun and ammunition had also been found in the March 7, 2018 search and "left off" of the original return submitted on March 15, 2018. ECF No. 115-10 at 4-5.

For a number of reasons, Warren's claims arising from these facts are without merit. First, the gun and ammunition were never admitted into evidence. Gibbens and Warren both testified that she had told Warren she saw no basis for a motion to suppress in his case. Because there was no trial, the firearm and ammunition were never offered or admitted into evidence against Warren before he pleaded guilty.

Second, neither state nor federal law specify a time limit for a warrant return. See La. C. Cr. P. art. 163(C); Fed. R. Cr. P. 41.[2] The time limit was set only on the warrant itself. The time limit cited by Warrant is for *execution* of a search warrant under state law. *See* La. C. Cr. P. art. 163(C) ("Except as authorized by Article 163.1 or 163.2, or as otherwise provided in this Article, or as otherwise provided by law, a search warrant cannot be lawfully executed after the expiration of the tenth date after its issuance."). A return containing an error was returned within 10 days. The fact that the return was later amended does not invalidate the search.

Nor was there a violation of Warren's constitutional rights. La. C. Cr. P. art. 703(A) permits suppression only of evidence obtained "by an *unconstitutional* search or seizure." It was not intended to permit suppression of evidence unless the seizure was violative of fundamental due process concepts. *See State v. Matthieu*, 506 So.2d 1209, 1212 (La. 1987). "When the statutory limitation (or duty) alleged to have been violated by the officer is not designed to implement fundamental rights of privacy, this court should not employ the exclusionary rule as a device to enforce such legislative directives." *State v. Gates*, 2013-1422 (La. 5/7/14), 145 So.3d 288, 299.[3]

---

[2] Rule 41(f)(1)(D) provides that "[t]he officer executing the warrant must promptly return it—together with a copy of the inventory—to the magistrate judge designated on the warrant." The rule does not establish a specific time period within which a warrant and inventory must be returned, only that it be done promptly.

[3] An application of federal law would have the same result. "[U]nless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Loyd*, 721 F.2d 331, 333

11

The potential issue with a late, supplemental return that lists additional evidence is whether the additional evidence was fabricated and not actually seized from the Defendant's residence. That is not a concern here. In this case, there is other evidence that the loaded gun was found in Warren's home: the video of the search. ECF No. 115. Also, the Sheriff Department's March 8, 2018 incident report for the search correctly noted that a gun and ammunition had been seized on March 7. Accordingly, not only was there no statutory or constitutional violation to serve as a basis for a motion to suppress, but other evidence shows the gun was actually seized from Warren's home and that the seizure was not concealed from Warren.

Because Warren's attorney did not err by failing to file a motion to suppress the gun and ammunition on the ground of the lateness of the second return on the warrant, neither her advice nor Warre's decision to plead guilty run afoul of *Strickland* or the Constitution.

---

(11th Cir. 1983) (*citing United States v. Stefanson*, 648 F.2d 1231, 1235 (9th Cir. 1981)); *see also United States v. Jacobs,* 125 Fed. App. 518, 522 (5th Cir. 2005), cert. den., 546 U.S. 831 (2005) ("Execution of a search warrant is essentially ministerial in nature."); *United States v. Comstock*, 801 F.2d 1194, 1207 (5th Cir. 1986), *cert. den.*, 481 U.S. 1022 (1987) (adopting the rule set forth in *citing Loyd* and *Stefanson*); *State v. Matthieu,* 506 So.2d 1209, 1213 (La. 1987) (citing *Comstock).*

Compare *United States v. Chatman*, 2020 WL 7251461, at *5 (N.D. Ala. 2020), *report and recommendation adopted,* 2020 WL 7246967 (N.D. Ala. 2020) (motion to suppress denied where there was no constitutional violation, prejudice, or bad faith in the one-year delay in filing the warrant return and the return inventory which did not accurately list all of the items seized during the search).

### 4. Warren's sentence was below the sentencing guidelines.

The next factor is whether Warren received the sentence he bargained for or expected. The minimum sentences in Warren's sentencing guideline ranges were 292 months on the first count and 60 months on the second count, to run consecutively.[4] The sentences imposed were 240 months and 60 months, to run consecutively–52 months below the minimum sentence recommended by the sentencing guidelines. ECF No. 65 at 17-18. Warren has not stated or shown that he expected to receive a particular sentence. But he clearly received a reduced sentence.

### 5. Warren has failed to establish that he was deprived of his right to appeal.

Warren contends he told his attorney he wanted to appeal, but a notice of appeal was not filed.

Gibbens states in her affidavit that she advised Warren of his right to appeal during meetings on at least five occasions: (1) on February 26, 2019, when signing the plea agreement; (2) on May 22, 2019, when reviewing the pre-sentence report; (3) on June 13, 2019, when preparing for the sentencing hearing; (4) on June 25, 2019, before the sentencing hearing; and on June 25, 2019, after the sentencing hearing. ECF No. 79. Gibbens states that Warren advised her that he did not want to appeal and, on June 25, 2019, signed a document acknowledging he was informed of his right

---

[4] Contrary to Warren's assertion in his brief, he had an adjusted offense level of 38. His acceptance of responsibility reduced his offense level by 3 points for a total offense level of 35. ECF No. 65 at 10.

13

and that he did not wish to appeal. ECF No. 79, 79-1. Gibbens states in her affidavit that Warren never told her that he wanted to appeal. ECF No. 79.

Warren contends in his brief (ECF No. 83) that, after his sentencing hearing, he told Gibbens that he believed his sentence was excessive. However, Gibbens advised him that he was unlikely to prevail on that issue, so Warren signed the waiver of his right to appeal at that time. ECF No. 79-1.

Warren further contends that, after he returned to prison, "inmate counsel" told him that the gun and ammunition should not have been "admitted into evidence" because the second return on the search warrant, listing the gun and ammunition, was untimely. ECF No. 83 at 5-6. The conviction for the gun and ammunition added 60 months (consecutive) to his sentence. Warren contends this is a due process violation. Warren claims he called Gibbens's office and left her a message about the error he had discovered and said he wanted to appeal after all. ECF No. 83 at 6. Then, he claims that a member of his family called Gibbens and asked about the appeal. ECF No. 83 at 6.

Gibbens testified that she was not in the office when Warren called, nor was her paralegal. Gibbens could not explain what happened to Warren's telephone call to her office. According to Warren, someone answered the phone and took a message. Gibbens explained that the proper procedure for handling such a call from a client would be for whoever answered the phone to contact Gibbens immediately and let her know that a client wanted to file a notice of appeal. Gibbens asserts that she was

14

never informed about Warren's call and request for an appeal. And after a thorough review, Gibbens was unable to discover who answered Warren's phone call.

An additional evidentiary hearing was held at Gibbens's request. ECF No. 111. At that hearing (held in May 2023, ECF No. 126), Gibbens stated that she had reviewed her old emails and found an email from Warren's sister. Although she had no independent recollection of that email, Gibbens stated that the email reminded her that she had spoken on the phone to a woman who claimed to be Warren's sister. Gibbens stated that, when she spoke to Warren's sister, the subject of an appeal came up. Gibbens did not recall Warren's sister requesting an appeal for him, but remembers the subject of appeal being discussed. Gibbens admitted that Warren's sister could have asked her to file an appeal for him, but did not recall her having done so.

Warren has not shown that Gibbens had any reason to believe he wanted to appeal his conviction or sentence. The details of any conversation with Warren's sister are, at best, unknown.[5] However, it is clear that Warren refused the opportunity to appeal five times, the last of which was in writing. To her credit, Gibbens left open the possibility that information about a call with Warren's sister

---

[5] Gibbens explained that, although she would not have accepted his sister's request as Warren's exercise of his right to appeal, the sister's request would have prompted Gibbens to contact Warren and ask him again whether he wanted her to file a notice of appeal. Gibbens stated that, although she customarily takes notes of her phone conversations and places them in the case file, she could not find any notes about her conversation with Warren's sister. Gibbens also did not know why, if his sister told her that Warren wanted to appeal, she had not gotten in touch with Warren after the phone call with his sister.

15

was unclear or misplaced. But the record does not support the aberrant conclusion that Gibbens and/or members of her staff simply failed to file a properly requested appeal or to confirm that request with Warren (the only proper proponent of such a request).

Therefore, Warren has failed to show that he clearly requested to appeal, or that a rational defendant in his position would necessarily want to appeal. To the contrary, the record evidence indicates that he was repeatedly consulted. And beyond his own statement, it does not indicate that his experienced trial attorney inexplicably failed to file an appeal at his request.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Warren's § 2255 Motion be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. ' 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party=s objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F. 3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. ' 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this 18th day of August 2023.

Joseph H.L. Perez-Montes
United States Magistrate Judge

17